Robert H. Dewberry
**THE DEWBERRY LAW FIRM**
20271 SW Birch Street #100
Newport Beach, CA 92660
Tel:  (949) 955-2940
Fax:  (949) 209-3883
Email:  robert.dewberry@dewlaw.net

Robert V. Cornish, Jr.
**PHILLIPS LYTLE LLP**
800 17th Street NW, Suite 450
Washington, DC  20005
Tel: (202) 617-2710
Fax: (202) 617-2799
Email:  rcornishjr@phillipslytle.com

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

---------------------------------------------------------------------

**WILLIAM WILBER, et al.,**

     **Plaintiffs,**

                                **No. SACV-12-01448
AG (JPRx)**

**TOP GLOBAL CAPITAL, INC., et al.**

     **Defendants.**
---------------------------------------------------------------------

## AMENDED COMPLAINT AS TO
## <u>DEFENDANT METAQUOTES SOFTWARE CORP.</u>

AMENDED COMPLAINT

Plaintiffs William Wilber ("Wilber"), Nicole Kharzi ("Kharzi"), Karen Oldmixon ("Oldmixon"), Larry Cain ("Cain"), Robyn Jamison and Otto Fox (the "Jamisons"), Gail Young ("Young"), Mark Thomas ("Thomas"), Cindy DiCosimo ("DiCosimo"), Carol Winkler and David Winkler (the "Winklers") (collectively "Plaintiffs"), by and through undersigned counsel, herewith submit their Amended Complaint against MetaQuotes Software Corp. ("MSC") and allege as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, insofar as the matter involves parties of diverse citizenship and the amount in controversy exceeds $75,000.00.

2.     This Court has supplemental jurisdiction over the non-federal claims asserted herein under 28 U.S.C. § 1367.

3.     This Court has jurisdiction over MSC because MSC has sufficient minimum contacts with this District by way of its conduct of business with other defendants located within this district in this matter so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and justice.

4.     Venue is proper in this District pursuant to 28 U.S.C. §1391(g), as this matter has involved multiple parties and several defendants reside within this District and with whom MSC and others transacted business.

**AMENDED COMPLAINT**

2

## THE PLAINTIFFS

5.      Plaintiff Wilber is resident of the Commonwealth of Virginia who purchased $10,000 worth of membership interests in Wal Capital, LLC d/b/a Wal Capital S.A. (collectively "Wal Capital").

6.      Plaintiff Kharzi is a resident of the State of Texas who purchased $10,412 worth of membership interests in Wal Capital.

7.      Plaintiff Oldmixon is a resident of the State of Texas who purchased $100,000 worth of membership interests in Wal Capital.

8.      Plaintiff Cain is a resident of the State of Arizona who purchased $320,000 worth of membership interests in Wal Capital.

9.      Plaintiff DiCosimo is a resident of the State of Texas who purchased $32,500 worth of membership interests in Wal Capital.

10.     Plaintiffs the Winklers are a married couple who are residents of the State of Washington.  The Winklers purchased $5,000 worth of membership interests in Wal Capital.

11.     Thomas is a resident of Texas who purchased $75,000 worth of membership interests in Wal Capital.

12.     Plaintiffs the Jamisons are residents of Texas who purchased $4,000 worth of membership interests in Wal Capital.

13.     Young is a resident of Texas who purchased $59,675 worth of membership interests in Wal Capital.

14.     With the exception of minor distributions to Plaintiffs, most of Wal Capital's capital is missing or was misappropriated by Wal Capital and/or others, rendering Plaintiffs' membership interests worthless.

## OTHER DEFENDANTS

15.     Defendant Melody Phan ("Phan") was at all times relevant to this proceeding a control person and principal of Wal Capital.  Phan was not and has not been licensed by any securities or commodities regulator at any time relevant to this proceeding.  On information and belief, Phan has provided on-the-record testimony to the Commodities Futures Trading Commission ("CFTC") concerning the currency trading at issue in this Complaint.  Phan is currently the subject of an enforcement action instituted by the CFTC before this Court, No. 14-cv-00283, wherein the CFTC has stated that the entities she controlled were neither registered nor exempt from registration under the Commodities Exchange Act, 7 U.S.C. §1, *et seq.* and regulations promulgated thereunder ("CEA") and that over $3 million of funds committed by investors has been misappropriated.  Phan has never been registered with the CFTC or National Futures Association ("NFA") in any capacity.  Phan has defaulted in this proceeding.

**AMENDED COMPLAINT**

4

16.     Defendant Marc Wallack ("Wallack") is the husband of Phan who served as an officer, director and agent of Wal Capital.   Wallack was not and has not been licensed by the CFTC or NFA at any time relevant to this proceeding.   Wallack has defaulted in this proceeding.

17.     Coldwell Ltd. ("Coldwell") is a company purportedly "specializing in offshore company registration" with offices at 1461 1st Avenue, Suite 360, New York, New York.   Coldwell's London office at 95 Wilton Road, Suite 3, London, England shared the same address as Top Global Capital, Inc. ("TGC"), another entity formed by Phan and Wallack.   On information and belief, Phan and Wallack utilized the services of Coldwell from its New York offices to form Wal Costa Rica and other entities. Coldwell has defaulted in this proceeding.

18.     Top Global Capital, Inc. ("TGC") is a corporation formed in the Republic of Panama on or about November 2, 2009 sharing a primary office address of Defendant Coldwell at 95 Wilton Road, Suite 3, London, England.   TGC purported to be a "licensed diversified capital/fund management company" under the regulatory of the "Europe Financial Regulation Firm," although TGC had no such licenses and there is no such regulatory agency.   TGC was used as a moniker for the trading program employed by Wal Capital and on information and belief never conducted currency trading in its own name or bore any risks of investment.   TGC has defaulted in this proceeding.

**AMENDED COMPLAINT**

19.     Wal Capital, LLC ("Wal USA") was a California Limited Liability Company formed by Defendants Phan and Wallack on or about January 30, 2008. Phan and Wallack served as officers and directors of Wal USA.  The last known address of Wal USA is 2030 Main Street, Suite 300, Irvine, California 92614.  On information and belief, Wal USA served as a "commodity pool" as defined under the CEA whose membership interests were placed or sold with Plaintiffs and others.  At all times relevant to this proceeding, Wal USA was neither registered nor exempt from registration under the CEA.  Wal USA, under the control of Phan and Wallack, directed funds to various currency trading firms serviced by MSC and to themselves in varying forms.  Wal USA has defaulted in this proceeding.

20.     Wal Capital, S.A. ("Wal Costa Rica") was a corporation formed in the Republic of Costa Rica on or about June 20, 2008.  The last known office address of Wal Costa Rica is Leutschenbachstrasse 95, 8050 Zürich, Switzerland, with an address of record at 25 Oeste, Edificio Asesores Adunaneles, San Jose, Costa Rica.  Wal Costa Rica also operated from 13139 Brookhurst Street, Suite C, Garden Grove, California 92843 and other locations within this district. Wal Costa Rica was used as a "d/b/a" for Wal USA for purposes of opening bank accounts in the United States that were later looted by Phan, Wallack and/or others.  At all times relevant to this proceeding, Wal Costa Rica was neither registered nor exempt from registration under the CEA.  On

**AMENDED COMPLAINT**

6

December 9, 2010, Wal Costa Rica was blacklisted by Swiss financial authorities. Wal Costa Rica has defaulted in this proceeding.

21.   My Forex Planet was a Nevada corporation formed in May 2006 by Defendants Phan and Wallack for the purpose of providing training in foreign currency trading to novice investors, including but not limited to Plaintiffs.  My Forex Planet was later used as a conduit to introduce Plaintiffs and others to Wal Capital.  The last known business address of My Forex Planet was 10885 Kalama River Avenue, Fountain Valley, California 92708.  Prior to this address change, My Forex Planet shared offices with Wal USA and other corporate entities under the control of Phan and Wallack.  At all times relevant to this proceeding, My Forex Planer was neither registered nor exempt from registration under the relevant provisions of the CEA.  My Forex Planet has defaulted in this proceeding.

22.   CTN Systems Corp. ("CTN") was a service provider to currency traders operating from its "offices" at 172 Madison Avenue, New York, New York (now known to be a vacant lot), under the control of its CEO, Defendant Morris Moskowitz ("Moskowitz"), who is on information and belief a resident of the United Kingdom. With the approval of CTN and Moskowitz, and at the request of Wal USA and Wal Costa Rica, CTN provided Phan and Wallack a computerized gateway to facilitate trading in foreign currency for Wal Capital and other entities controlled by Phan and Wallack.  CTN and Moskowitz have defaulted in this proceeding.

**AMENDED COMPLAINT**

7

## DEFENDANT MSC

23.    MSC is a corporation purportedly based in the Bahamas with its primary offices in Cyprus.   MSC replaced CTN in May 2010 as the computerized gateway utilized by Wal Capital, while operating within this district, to facilitate currency trading on its behalf with various firms in the United States and elsewhere.

## BRIEF SUMMARY

24.    This case involves the loss of over $5 million in a currency trading scam of which the current Plaintiffs are but a small part.  Discovery conducted in this case to date has revealed a complex fraud centered in this district involving multiple parties on a global basis.  The trust of unsuspecting investors in Phan, Wallack and others led to the disappearance of their hard earned dollars committed to Wal Capital.  When this scheme reached the door of MSC, it had an opportunity to decide given the "red flags" before it whether its facilitation of trading for Wal Capital would also facilitate the frauds of parties within this district in violation of United States commodities laws. MSC knew or should have known that Wal Capital was operating in the United States, was controlled by persons in the United States, accepted investments from people within the United States, and thus was supposed to be registered under the CEA.  MSC ignored these red flags, because like Wal Capital, it too was conducting business illicitly in the United States.  In short, MSC could not or would not take action against

**AMENDED COMPLAINT**

Wal Capital because doing so would jeopardize or impede MSC's own illicit business in the United States and generate substantial liabilities to state and federal authorities.

## AMENDED STATEMENT OF FACTS

25.    This Amended Statement of Facts supercedes and replaces the Statement of Facts in prior pleadings as to MSC.

26.    In May 2006, Phan and Wallack formed My Forex Planet to offer training services to novice investors and others interested in trading global currency markets. The training that Phan and Wallack offered was provided through both on-site in various offices in California, via the internet through webinars and through the provision of training materials directly to others either electronically or through the United States mail.

27.    My Forex Planet offered a "live" and a "demo" trading system, whereby students would practice their currency trading under Phan's instruction without risk of losing their capital.  The students would then "graduate" to a funded account that they would trade for themselves.  Phan was generally held in high regard by her students for her trading acumen and purported successes in making substantial profits in the currency markets

28.    On information and belief, My Forex Planet utilized, and had its students utilize, the services of CTN through its trading gateway which directed such trades for settlement with currency trading firms in the United States, Switzerland and the United

Kingdom.  On information and belief, accounts opened on behalf of students of My Forex Planet were carried and cleared at those firms, and these accounts generated a "pip" - a commission per trade that was paid from the currency trading firms to CTN.

29.    In approximately early 2007, Phan became involved with a group of individuals who practiced an advanced form of meditation ("Meditation") through a respected instructor whose pupils were across the United States.  Phan developed personal relationships, described her trading successes and garnered the trust of several of her fellow Meditation students and ultimately convinced many of them, including Plaintiffs Cain, Kharzi, Jamison and others, to enroll in the currency trading training programs offered by My Forex Planet.

30.    In late 2007, Phan and Wallack realized that they were sitting on a mother lode of revenue not only from potential students for My Forex Planet from the Meditation group, but for additional commission and referral revenue for trading. Given the trust and affinity developed by Phan with fellow Meditation students, Phan and Wallack realized that they could gather large sums of money from these students who were willing to place their money in a commingled investment vehicle managed and controlled by an apparently successful and trusted fellow student.

31.    The veneer of success that Phan exuded to Plaintiffs and others was a sham.  On information and belief, Phan and Wallack had made risky real estate

**AMENDED COMPLAINT**

10

investments in California, were falling behind on mortgage payments and could not "flip" the properties they owned at a profit or "break-even" point.

32.   In January 2008 or thereabouts, Phan and Wallack decided to create a commingled fund that would gather assets of students of My Forex Planet and the investors that they would refer as potential investors.  Accordingly, Wal USA was formed.  This was a first step in a scheme whereby Phan and Wallack sought to conceal the status of Wal Capital as to avoid registration under United States commodities laws and to loot it of its assets.

33.   On information and belief, in early 2008, CTN informed Phan and/or Wallack that they would not handle accounts for parties based in the United States, but would instead accept accounts for parties based outside of the United States.  Phan and Wallack thereafter determined that their currency trading venture required an offshore corporate entity to capture the enormous revenue that students of the Meditation class and others represented.

34.   On information and belief, in Spring 2008, Phan and/or Wallack contacted Coldwell to inquire about forming an offshore entity in parallel to Wal USA to avoid registration under the commodities laws.  Upon the recommendation of Coldwell, Phan and Wallack determined that a corporate entity in Costa Rica would best serve their illicit needs.  On information and belief, Coldwell arranged for the formation of Wal Costa Rica in June 2008.

**AMENDED COMPLAINT**

35.   From July 2008 onward, Phan and Wallack continued their efforts to build a ready base of investors for Wal Capital through promoting My Forex Planet through video testimonials and continuing affinity with students of the Meditation class.

36.   By the Summer of 2008, Phan and Wallack had students of My Forex Planet clamoring for a pooled investment vehicle that utilized the strategies utilized by Phan for her purported successful trading, as some students had lost substantial sums of money trading themselves under the watch of Phan and My Forex Planet.  Phan and Wallack, however, realized that they could create the veneer needed to conceal their illicit scheme without forming an investment vehicle that would lend them the needed legitimacy to gather the assets of others.

37.   With the crash of Lehman Brothers in September 2008 and its effects on the real estate and financial markets, Phan and Wallack needed to accelerate their plans to generate funds to keep their California property portfolio afloat and to satisfy the demand they had created for a currency fund.  In order to facilitate their scheme, Phan and Wallack determined that Wal Capital would serve as the fund and thus provide the flow of customer funds they needed.

38.   To this end, Phan and Wallack, acting on behalf of Wal USA and Wal Costa Rica, opened a bank account at the Garden Grove Branch of Bank of America to accept funds for investor subscriptions for membership interests in Wal Capital.  In order to facilitate their scheme so that (a) both Phan and Wallack could easily access

**AMENDED COMPLAINT**

funds in the United States and (b) avoid registration as a domestic commodity pool under the CEA, Phan and Wallack opened the bank account as "Wal Capital, LLC d/b/a Wal Capital, S.A."   This enabled Phan and Wallack to gather funds from Plaintiffs and other customers within the United States for deposit in accounts maintained within this district, while at the same time providing them the opportunity to designate Wal Costa Rica as the offshore fund with service providers such as MSC, currency trading firms and others that would conduct business with Wal Capital.

39.   In May 2010, Phan announced that Wal Capital would no longer be using the services of CTN but would instead utilize the services of Defendant MSC. Plaintiffs were told MSC provided a better trading system than CTN, a representation upon which Plaintiffs reasonably relied.  Likewise, Plaintiffs had reason to believe that MSC could transact business in the United States and the State of California and that MSC would not transact business with an entity or individuals operating in violation of state or federal laws.  As in the case with CTN, MSC would in return for providing the computer gateway for trading currency with various firms (namely Advanced Markets, Gain Capital, FXCM, FX Direct and others), MSC would receive a commission in the form of a "pip" for the trades executed on behalf of Wal Capital.

40.   None of the communications that MSC received from Phan or others acting on behalf of Wal Capital in commencing its business relationship emanated from jurisdictions outside the United States.  Further, Wal Capital disclosed to MSC

**AMENDED COMPLAINT**

that it was using the Bank of America account domiciled in the United States to gather funds in consideration for membership interests in Wal Capital.   MSC knew and had clear evidence before it that there was no legitimate purpose in having non-U.S. investors forward funds to a bank account in the United States for investment in an offshore fund, as all such funds and the clients who sent them would be subject to a panoply of due diligence and tax reporting under the CEA, which is a primary reason why offshore funds are formed in the first place.

41.   Wal Capital's conduct did not deter MSC.  Rather, MSC was at the time conducting business in the United States with other currency trading firms while not being authorized to transact business in the State of California or any other state at the time it chose to conduct business with Wal Capital. On information and belief, MSC also did not possess federal or state taxpayer identification and did not pay United States or California taxes on any revenue derived from sources within the United States or California.

42.   MSC was thus the perfect partner for Wal Capital, because (a) it too was conducting business in the United States illicitly and (b) would either discard or disregard any documentation that showed Wal Capital was truly operating in the United States, soliciting funds from customers within the United States, banking in the United States and controlled by Phan and Wallack, both residents of the United States.

**AMENDED COMPLAINT**

14

43.   From at least May 2010 through December 2010, MSC received commissions and fees  in the form of "pips" for all currency trades conducted on behalf of Wal Capital.  All of the trades executed on behalf of Wal Capital on which MSC earned "pips" were made in violation of the registration provisions of the CEA, as Wal Capital was neither registered nor exempt from registration under the CEA.

44.   In December 2010, the Wal Capital scheme hit a roadblock.  On or about December 9, 2010, Swiss financial regulators "blacklisted" Wal Costa Rica as it did not have a bona-fide office in Switzerland.  As such, MSC could no longer lawfully transact business with Wal Costa Rica.   Nevertheless, this "blacklisting" was a non-sequitur as approximately $3.6 million invested Wal Capital had been by that time had been looted by Phan and Wallack and over $1.4 million was lost in currency trading, a portion on which MSC unlawfully received commissions in the form of "pips."

## CAUSES OF ACTION

45.   Except for the causes of action noted herein, Plaintiffs note that these causes of action are the only ones being pursued as to MSC at this time and that causes of action not noted herein that were pled elsewhere either are or will be withdrawn with prejudice as per direction of the Court.

### I.  NEGLIGENCE
### (against MSC)

46.   Paragraphs 1 through 44 are repeated as if stated in their entirety.

**AMENDED COMPLAINT**

15

47.   Plaintiffs were owed common law duties by MSC which were breached.

48.   MSC had common law duties to, *inter alia*, conduct appropriate due diligence on the registration status, business location, repute and business character of parties with whom they each contracted to facilitate currency trading, fully understanding that the failure to do would lead to, among other things, the receipt of commissions and other compensation on trades made by Wal Capital in violation of the CEA.  Further, MSC had common law duties to ensure that sales materials bearing their names were truthful and accurate as Wallack and Phan were each acting as apparent agents of MSC in communications with Plaintiffs and others.  In addition, MSC failed to conduct business in the United States with registrations required by the State of California and, on information and belief, failed to pay taxes on revenue derived from sources within the United States and California, including but not limited to revenue derived from Wal Capital.

49.   MSC breached its common law duties to Plaintiffs insofar as, *inter alia*, (a) it failed to conduct any meaningful due diligence on Phan, Wallack or Wal Capital, (b) permitted Phan, Wallack and Wal Capital co-opt MSC's name in promotional materials to provide requisite credibility to those considering investments in membership interests in Wal Capital, (c) conducted business in the United States and California without proper registration and (d) earned commissions in the form of

**AMENDED COMPLAINT**

16

"pips" on trades consummated on behalf of Wal Capital that were done in violation of the CEA.

50.     The aforementioned breaches of duty are direct and proximate causes of Plaintiffs' damages.   As such, each of the Defendants are liable to Plaintiffs under causes of action for negligence.

## II.  BREACH OF CONTRACT
### (against MSC)

51.     Paragraphs 1 through 44, and 46 through 50 are repeated as if stated in their entirety.

52.     MSC bargained with Plaintiffs as members of Wal Capital for good and valuable consideration to conduct their respective business dealings with Wal Capital in good faith.   MSC breached its contracts with Plaintiffs insofar as *inter alia* they (a) did not in good faith conduct any due diligence on Wal Capital, its domicile or banking relationships, (b) allowed Phan and Wallack to co-opt their business reputation to act their apparent agents, (c) conducted business in California without the registrations required by the State of California and (d) earned commissions of trades made on behalf of Wal Capital that were done in violation of the registration provisions of the CEA.

**AMENDED COMPLAINT**

17

53.     The aforementioned breaches of contract are actual causes of damage to Plaintiffs.  Accordingly, Plaintiffs are entitled to contractual damages from MSC for its breaches.

### III.  CONVERSION / AIDING AND ABETTING CONVERSION
### (against MSC)

54.     Paragraphs 1 through 44, and 46 through 53 are repeated as if stated in their entirety.

55.     MSC received ill-gotten trading commissions in the form of "pips" from trading conducted by Wal Capital on behalf of its members, including Plaintiffs. Funds representing those ill-gotten commissions were transferred to MSC by the trading firms with whom Wal Capital conducted business.  MSC unlawfully collected these commissions as these trades were consummated on behalf of an entity (Wal Capital) that was required to be registered under the CEA but was not.

56.     By virtue of these transfers, MSC has withheld equitable ownership of these assets that would otherwise be reflected in the value of their membership interests.  Accordingly, MSC is liable for these conversions and are individually liable jointly and severally to Plaintiffs.

**AMENDED COMPLAINT**

18

## IV.  AIDING/ABETTING VIOLATIONS OF COMMODITIES EXCHANGE ACT
### (against MSC)

57.    Paragraphs 1 through 44, and 46 through 56 are repeated as if stated in their entirety.

58.    Section 22(a)(1) of the CEA creates liability for "[a]ny person . . . who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter. . . ."    Plaintiffs may maintain a cause of action against MSC for violations of CEA Section 22(a)(1). In addition, Section 25(a) of the CEA provides that "[a]ny person . . . who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages."

59.    MSC aided and abetted Phan, Wallack, and Wal Capital in their respective wrongful conduct in violation of the CEA through, *inter alia*, (a) providing the means and apparatus through which the fraudulent conduct of Wal Capital, Phan and Wallack could be consummated, (b) failing to conduct any due diligence of any meaningful sort of the business character, repute, domicile or banking relationships of Wal Capital, Phan or Wallack, (c) providing legitimacy to the scheme perpetrated by Phan and Wallack through Wal Capital through, *inter alia*, permitting Phan and Wallack to tout MSC's services to Plaintiffs and other holders of membership interests in Wal Capital and (d) unlawfully earning fees and commissions derived from Wal

**AMENDED COMPLAINT**

19

Capital in light of Wal Capital's requirement to be registered under the CEA.  As such, MSC is liable to Plaintiffs under CEA Sections  22(a)(1) and 25(a).

## V.  UNJUST ENRICHMENT
### (against MSC)

60.    Paragraphs 1 through 44, and 46 through 59 are repeated as if stated in their entirety.

61.    Plaintiffs' membership interests in Wal Capital represent a primary source of its revenue and capital.  MSC earned revenue in the commissions in the form of "pips" and other funds for its handling of trades for Wal Capital.

62.    As a direct and proximate result of the acts alleged herein, MSC wrongfully deprived Plaintiffs of the value of their membership interests to the extent the underlying assets of those membership interests were used to pay MSC commissions on trades executed on behalf of Wal Capital in violation of the CEA. MSC was thus unjustly enriched.  As it would be unjust under the circumstances for MSC to benefit from the fraudulent and wrongful activities described herein, MSC is liable to Plaintiffs for such unjust enrichment and should be required to disgorge all fees and commissions proportionate to the capital representing Plaintiffs' membership interests.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that, upon due proceedings, relief be rendered herein in their favor as follows:

**AMENDED COMPLAINT**

20

1. Awarding to Plaintiffs money damages against MSC for all losses, injuries, and damages suffered as a result of MSC's wrongful acts, including rescission of all commissions and fees earned by MSC attributable to the monetary value of Plaintiffs' membership interests at the time of purchase and prejudgment interest as appropriate;

2. Awarding Plaintiffs punitive damages against MSC in an amount no less than $2 million.

3. Awarding Plaintiffs' counsel attorneys' fees and costs of suit as authorized by law and/or equity;

4. Awarding Plaintiffs interest on all amounts awarded herein from the date of judicial demand at the maximum rate permitted by law; and

5. Awarding Plaintiffs all other relief to which they may be permitted at law or in equity upon the premises hereof.


Dated:          August 30, 2014

                              _____/s/_____
                              Robert H. Dewberry
                              **THE DEWBERRY LAW FIRM**
                              20271 SW Birch Street #100
                              Newport Beach, CA 92660
                              Tel:  (949) 955-2940
                              Fax:  (949) 209-3883
                              Email:  robert.dewberry@dewlaw.net

**AMENDED COMPLAINT**

21

1

2

3            _____/s/_____
            Robert V. Cornish, Jr.
4           **PHILLIPS LYTLE LLP**
            800 17th Street NW, Suite 450
5           Washington, DC 20006
            Tel:   (202) 617-2710
6           Fax:   (202) 617-2799
7           Email:  rcornishjr@phillipslytle.com

8           Admitted *pro hac vice*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                    **AMENDED COMPLAINT**

**CERTIFICATE OF SERVICE**
**Wilber, et al. v. Top Global Capital, Inc., et al.**

UNITED STATES DISTRICT COURT – CENTRAL DISTRICT OF CALIFORNIA,
SOUTHERN DIVISION – SANTA ANA

I am employed in the District of Columbia, City of Washington.  I am over the age of 18 and not a part to the within action.  I am employed in the office of the member of the bar admitted *pro hac vice* to this Court at whose direction the service was made.  My business address is 655 15th Street NW, Suite 810, Washington, DC 20005.

On August 30, 2014, I served the following documents described as:

**AMENDED COMPLAINT AS TO**
**DEFENDANT METAQUOTES SOFTWARE CORP.**

I served the document(s) on the interested parties by the following means:

**[X]   (BY COURT'S CM/ECF SYSTEM)**   Pursuant to Local Rules, I electronically filed the documents with the Clerk of Court using the CM/ECF System, which sent notification of that filing to the persons listed below.

**[X]   (BY U.S. MAIL)** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed above and I deposited the sealed envelope or package with the U.S. Postal Service, with the postage fully prepaid to the persons listed below.  **This method of service has been agreed upon by the Plaintiffs and MSC by way of stipulation filed with the Court.**

Martin F. Triano, Esq.
Triano & Byrne
25 Jessie Street, 16th Floor
San Francisco, CA  94105
 -and-
marty@trianobyrne.com

**AMENDED COMPLAINT**

23

**[X]**   **(FEDERAL)**  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on August 30, 2014, in Washington, DC.


_____/s/_____
Robert V. Cornish, Jr.

**AMENDED COMPLAINT**

24